Roger **STEFFENHAGEN**, et al., **Plaintiffs**,

v.

William **ARMONTROUT**, et al., **Defendants**.

No. 88–4348–CV–C–9.

United States District Court, W.D. Missouri, C.D.

Oct. 11, 1990.

John D. Smith, Oliver, Walker, Carlton & Wilson, Columbia, Mo., for plaintiffs.

Gary L. Gardner, Paul J. LaRose, Missouri Atty. General's Office, Jefferson City, Mo., for defendants.

## ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BARTLETT, District Judge.

This case involves the death of Mark Steffenhagen, an inmate of the Missouri State Penitentiary who was killed by a fellow inmate. In their Amended Complaint, Steffenhagen's parents assert a 42 U.S.C. § 1983 claim against officials of the Missouri State Penitentiary. They seek damages for the violation of both their son's constitutional rights and their own constitutional rights to a parent-child relationship.

On April 28, 1989, defendants filed a Motion for Summary Judgment in which they argued they were entitled to qualified immunity because the Steffenhagens had no clearly established constitutional right to a parent-child relationship. However, defendants' motion was denied "for the reasons stated in plaintiffs' ... response."

On appeal, the Eighth Circuit Court of Appeals remanded the case for reconsideration. The court refrained from expressing an opinion on the merits of defendants' motion or plaintiffs' claims. However, it requested that I provide a more complete statement of my reasons for denying defendants' motion.

I have reconsidered my order denying defendants' summary judgment motion. In compliance with the Eighth Circuit's directive, I have set forth below the reasons for which I denied defendants' motion.

*Standard for Motion to Dismiss*

All factual allegations in the Complaint are to be taken as true as well as all inferences that reasonably may be drawn from those facts. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). A Complaint should not be dismissed for failure to state a claim for relief unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

■ Although defendants' motion was labeled "Motion for Summary Judgment," I analyzed it as a Motion to Dismiss because it was based only on the pleadings.[1] Whenever a summary judgment motion is based solely on the pleadings, it must be treated as the "functional equivalent" of a Motion to Dismiss for failure to state a claim. *Blum v. Morgan Guaranty Trust Co.*, 709 F.2d 1463, 1466 (11th Cir.1983); *Franklin & Joseph, Inc. v. Continental Health Industries, Inc.*, 664 F.Supp. 719, 720 (S.D.N.Y.1987). Thus, the standard for a Motion to Dismiss is applicable and all well-pleaded, material allegations of fact must be taken as true. *Blum*, 709 F.2d at 1466.

*Facts*

Plaintiffs allege in their Amended Complaint that they are the parents of decedent Mark Steffenhagen, that at the time of his death, Mark Steffenhagen was serving a 20 year sentence in the Missouri State Penitentiary in Jefferson City, Missouri, that Mark was a "weak and vulnerable" inmate who had been physically attacked several times while in prison, that Steven Parkus, another inmate, had threatened to assault or seriously injure Mark, that these threats were reported to penitentiary employees and that Parkus was an "extremely dan-

---

1. On August 26, 1990, defendants filed a Motion to Stay Reconsideration of the Court's Order Denying Summary Judgment Pending Completion of Discovery on the Secondary Evidentiary Issue. Essentially, defendants seek an opportunity to conduct discovery to obtain evidence with which to support their "Motion for Summary Judgment." Because I am treating defendants' motion as one for dismissal rather than as one for summary judgment, the Motion to Stay Reconsideration will be denied.

gerous prisoner" with a history of attacking other inmates, which defendants knew or should have known.

The Amended Complaint further alleges that on November 24, 1985, Mark was assigned to walk four of Housing Unit 2B, which is a "protective custody unit" designed to protect "weak and vulnerable" inmates from other inmates, that defendants confined Mark in walk four of Housing Unit 2B to protect him from attacks by other inmates, that defendants knew or reasonably should have known Mark was particularly vulnerable to attack, that defendants knew or by reasonable investigation should have known of numerous instances when inmates had gained unauthorized access to the cells in walk four of Housing Unit 2B, that such unauthorized entry created a significant and present danger to Mark, that on November 24, 1985, Steven Parkus killed Mark in the protective custody unit, that defendants had a duty to take precautionary or corrective action to prevent Mark's death but failed to do so, and that defendants' acts or omissions were committed with deliberate indifference and reckless disregard toward Mark's right to be free from violent attack by fellow prisoners.

Plaintiffs also allege that defendants Armontrout and Durham failed to properly supervise their employees, that defendants Durham and Hagendorf had a duty to enforce state and penitentiary regulations but failed to do so and that defendant Hagendorf failed to check Mark's cell periodically to ensure his safety.

### Discussion

Defendants argue that they are entitled to qualified immunity. Whether defendants are entitled to qualified immunity as a matter of law is the only issue addressed in this opinion.

■ A government official sued in his individual capacity under § 1983 is entitled to qualified immunity unless the plaintiff

shows that 1) the official's alleged conduct violated a "clearly established" statutory or constitutional right; 2) a reasonable person would have known the right existed at the time of the alleged conduct; and 3) a reasonable person would have known that his alleged conduct violated the right. *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3038–39, 97 L.Ed.2d 523 (1987); *Mitchell v. Forsyth,* 472 U.S. 511, 526–33, 105 S.Ct. 2806, 2815–19, 86 L.Ed.2d 411 (1985); *Myers v. Morris,* 810 F.2d 1437, 1458–61 (8th Cir.1987), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987); *Smith v. Marcantonio,* 910 F.2d 500, 501 (8th Cir.1990).

Qualified immunity is founded on a policy of protecting government officials from the consequences of insubstantial civil damages suits. *Harlow v. Fitzgerald,* 457 U.S. 800, 816, 102 S.Ct. 2727, 2737, 73 L.Ed.2d 396 (1982). These consequences include "distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *Id.; Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. However, "[i]n situations of abuse of office, an action for damages may offer the only realistic avenue for vindication of constitutional guarantees." [2] *Harlow,* 457 U.S. at 811–15, 102 S.Ct. at 2734–36 (citations omitted).

Seeking to minimize the disruption caused by damages suits against government officials, the Supreme Court held in *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738, that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Discovery should be avoided where possible because "[i]nquiries of [that] kind can be peculiarly disruptive of effective government." *Id.* at 817, 102 S.Ct. at 2737. Thus, the threshold question in determining whether defendants in this case are entitled to qualified immunity is whether their conduct violated

---

**2.** It is important to keep in mind the policies underlying § 1983. In *Robertson v. Wegmann,* 436 U.S. 584, 590–91, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978), the Court stated: "The poli-

cies underlying § 1983 include compensation of persons injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law."

a "clearly established" constitutional right. Under *Harlow*, this question must be answered before discovery in this case proceeds further.

■ A "clearly established" constitutional right must have existed *at the time of the official's alleged actions. Id.* at 818, 102 S.Ct. at 2738. In this case, the relevant time was November 24, 1985, the date on which Mark Steffenhagen was killed due to defendants' alleged failure to protect him from other inmates.

■ At the time of his death, Mark Steffenhagen had a "clearly established" constitutional right to be protected from physical assault by fellow inmates. In *Miller v. Solem*, 728 F.2d 1020, 1024 (8th Cir.1984), the Eighth Circuit stated that "[a] prisoner has a 'clearly established' Eighth Amendment right to be reasonably protected from known dangers of attack by fellow inmates." *See also Smith v. Marcantonio*, 910 F.2d 500, 501 (8th Cir.1990) ("[prisoner's] right to be protected from harm by fellow inmates ... [is] beyond dispute."); *Finney v. Arkansas Board of Corrections*, 505 F.2d 194, 201 (8th Cir.1974); *Holt v. Sarver*, 442 F.2d 304, 308 (8th Cir.1971).

The court recognized that prison officials are not entitled to qualified immunity if they are aware of a risk of injury to an inmate and nevertheless fail to take appropriate steps to protect the inmate from that known danger. *Id.* at 1024 (citations omitted).

Therefore, under *Miller*, a plaintiff can recover damages under § 1983 if prison officials were "deliberately indifferent to [plaintiff's] constitutional rights either because they actually intended to deprive him of some right, or because they acted with reckless disregard of his right to be free from violent attacks by fellow inmates." *Id.* at 1024; *Branchcomb v. Brewer*, 669 F.2d 1297, 1298 (8th Cir.1982). Hence, " 'deliberate indifference' denotes both recklessness and actual intent." *Miller*, 728 F.2d at 1024.

Because *Miller* and *Branchcomb* were decided before November 24, 1985, a prisoner's constitutional right to be reasonably protected from a known danger of attack by fellow inmates was clearly established on November 24, 1985. Plaintiffs clearly assert that their son was deprived of this right. Plaintiffs allege that "the acts of Defendants were committed with deliberate indifference and reckless disregard of Decedent's right to be free from violent attack by fellow prisoners and to the need of the deceased for protection from fellow prisoners...." Amended Complaint at ¶ 20.

In their Amended Complaint, plaintiffs also assert that defendants' conduct violated their constitutional right to a parent-child relationship with their son. Defendants argue that because there was no "clearly established" constitutional right to a parent-child relationship at the time of Mark's death, they are entitled to qualified immunity.

Apparently, defendants erroneously believe that the right that must be "clearly established" is the parents' *right to sue* for the violation of Mark's constitutional right rather than the existence of Mark's right to be protected from attack by fellow inmates. However, in determining whether a "clearly established" constitutional right existed on November 24, 1985, the inquiry must focus instead on the nature of the government officials' *conduct*.

In *Harlow*, the Supreme Court recognized the importance of focusing on the nature of the official's alleged conduct:

> By defining the limits of qualified immunity essentially in objective terms, we provide no license to *lawless conduct*. The public interest in deterrence of *unlawful conduct* and in compensation of victims remains protected by a test that *focuses on* the objective legal reasonableness of an official's *acts*. Where an official could be expected to know that certain *conduct* would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such *conduct* may have a cause of action.

*Id.* 457 U.S. at 820, 102 S.Ct. at 2738–39.

In *Myers v. Morris*, the Eighth Circuit Court of Appeals explained:

To determine a qualified immunity defense, the court must focus on the *specific nature of the conduct complained of and the state of the law with respect to the identified conduct* at the time the official acted. In *Mitchell v. Forsyth,* for example, the fourth amendment right to be free from unreasonable searches was certainly clearly established when the attorney general ordered wiretaps. What was not clearly established was whether the *specific conduct in the context indicated* (warrantless wiretapping for domestic national security purposes) was clearly constitutionally proscribed. 810 F.2d at 1459 n. 16.

The conduct at issue in this case is defendants' alleged failure to protect Mark Steffenhagen from attack by other inmates when defendants knew or reasonably should have known that he was vulnerable to attack. Specifically, plaintiffs allege that certain defendants failed to properly supervise subordinate officials, that others failed to enforce state and penitentiary regulations and that one failed to ensure Mark's personal safety by periodically checking Mark's cell.

Because the focus of the qualified immunity determination is on the nature of defendants' conduct, the right that must be "clearly established" is Mark's constitutional right to be protected by defendants from attack by other inmates. This right was clearly established at the time of Mark's death. Whether Mark's parents had a clearly established right to sue is irrelevant to the qualified immunity determination.

Furthermore, defendants' argument is illogical. If Mark Steffenhagen had survived and asserted a § 1983 claim on his own behalf, defendants would not have been entitled to qualified immunity because Mark would have a "clearly established" constitutional right to protection from attack by inmates. *See Miller,* 728 F.2d at 1024. Therefore, it is illogical to accept defendants' argument and grant them qualified immunity in the more extreme situation where Mark has been killed. Such a result leads to the ridiculous conclusion that a government official is more likely to be entitled to qualified immunity the more severely he injures an individual or otherwise violates that person's constitutional rights. Thus, I reject defendants' argument.

Finally, if the facts alleged in plaintiffs' Complaint are taken as true, a reasonable jury could find that defendants acted with deliberate indifference to Mark's constitutional right to be reasonably protected from attack from fellow inmates. Furthermore, a reasonable jury could conclude that reasonable persons in defendants' position could have known that their conduct violated Mark's constitutional right to be reasonably protected from attack by fellow inmates.

### Conclusion

Taking as true the facts alleged in the Amended Complaint, I find that plaintiffs adequately states a § 1983 claim against defendants and that defendants are not entitled to qualified immunity.

Accordingly, it is hereby ORDERED that defendants' Motion for Summary Judgment is denied.