# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-1778

_____

| | | |
|---|---|---|
| Elaine Tucker, Co-Administrator of the Estate of William Edward Tucker, deceased, Ricky Tucker, Co-Administrator of the Estate of William Edward Tucker, deceased, | * * * * * * | |
| | * | |
| Appellees, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Marvin Evans, Jr.; Kendrick Daniels, originally sued as Kedrick Daniels; Larry Norris, Individually and as the Director of the Arkansas Department of Corrections, | * * * * * | |
| | * | |
| Appellants. | * | |

_____

Submitted: September 10, 2001

Filed: January 14, 2002

_____

Before McMILLIAN, BEAM, and HANSEN, Circuit Judges.

_____

BEAM, Circuit Judge.

This appeal comes before us following the district court's order denying three prison employees' motion for summary judgment based on qualified immunity. We reverse.

## I. BACKGROUND

On May 9, 1998, William Edward Tucker (now deceased) was housed in Barracks 7, a general population barracks, at the East Arkansas Regional Unit of the Arkansas Department of Correction (ADC). That evening, Officer Kendrick Daniels was assigned to the control booth for Barracks 7 and 8. At approximately 10:30 p.m., Daniels conducted a count of the inmates in Barracks 7. After finishing with the count, at around 10:40 p.m., Daniels turned out the lights to Barracks 7 and returned to the control booth in order to write down the count. Appellees (the administrators of Tucker's estate) allege that shortly after Daniels turned out the barracks lights for the night, inmate Weaver and other inmates went to Tucker's bed and beat him severely about the head and shoulders with a broken bedframe. Tucker died as a result of his injuries.

Appellees brought this section 1983 suit against Daniels for failing to protect Tucker from attack by other inmates. Appellees also sued Warden Marvin Evans and Director Larry Norris for failing to properly train the prison staff, and for failing to protect Tucker. The prison employees filed a motion for summary judgment claiming they were entitled to qualified immunity. The district court denied the motion, finding that factual disputes remained concerning whether Daniels failed to properly perform his inspection duties, incorrectly interpreted an argument between Tucker and Weaver, and failed to supervise the barracks by turning his attention elsewhere. In addition, the district court found that Daniels was prohibited from entering the barracks to assist Tucker due to an ADC policy requiring the officer in possession of the key to remain outside the barracks until assistance arrived. The district court also stated that there were disputed facts regarding whether Warden Evans and Director

Norris had prior notice of a pervasive risk of harm based on <u>Smith v. Arkansas Department of Correction</u>, 103 F.3d 637 (8th Cir. 1996), and whether they knew about prior assaults in the barracks.

## II. DISCUSSION

We review a district court's denial of qualified immunity de novo. <u>Jones v. Shields</u>, 207 F.3d 491, 494 (8th Cir. 2000). When reviewing a motion for summary judgment the question before this court is whether the record, viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>Webb v. Lawrence County</u>, 144 F.3d 1131, 1134 (8th Cir. 1998).

The prison employees are entitled to qualified immunity unless they violated Tucker's "clearly established" constitutional rights. <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982). The Supreme Court has made it clear that the Eighth Amendment encompasses an inmate's right to be protected from harm by fellow inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994). However, prison officials violate this right only when they exhibit a "deliberate or callous indifference" to an inmate's safety. <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986); <u>accord</u> <u>Newman v. Holmes</u>, 122 F.3d 650, 652 (8th Cir. 1997) (holding prison official is only liable if "deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates").

We have held in several cases that qualified immunity for prison officials is appropriate when an Eighth Amendment failure-to-protect claim arises from inmate injuries resulting from a surprise attack by another inmate. <u>See</u> <u>Curry v. Crist</u>, 226 F.3d 974, 978-79 (8th Cir. 2000); <u>Jackson v. Everett</u>, 140 F.3d 1149, 1151 (8th Cir. 1998); <u>Prosser v. Ross</u>, 70 F.3d 1005, 1007 (8th Cir. 1995); <u>Smith v. Marcantonio</u>, 910 F.2d 500, 502 (8th Cir. 1990).

Taken together, the cases indicate that Daniels is entitled to qualified immunity unless a reasonable official would have known that Daniels' actions constituted a deliberate, callous, or reckless disregard for Tucker's safety. See Prosser, 70 F.3d at 1007. "A failure-to-protect claim has an objective component, whether there was a substantial risk of harm to the inmate, and a subjective component, whether the prison official was deliberately indifferent to that risk." Curry, 226 F.3d at 977 (citations omitted). Even if there was a substantial risk of harm to Tucker, there is no evidence that Daniels was deliberately indifferent to that risk.

The district court reasoned that this case is not a typical failure-to-protect case because the appellees have specifically alleged that Daniels failed to properly perform his inspection duties, misinterpreted an argument between Tucker and Weaver, failed to properly supervise the barracks, and failed to promptly assist Tucker after the attack. The district court held that because those specific factual allegations were in dispute, the motion for summary judgment must fail. But in this case, even if all of the allegations are taken as true, Daniels' conduct fails to rise to the level of a constitutional wrong. The alleged conduct certainly points to negligence, and quite possibly even gross negligence, but that is insufficient to prove a violation of Tucker's constitutional rights. Appellees must demonstrate that Daniels was deliberately indifferent to a risk to Tucker and the record does not support such a finding. See Farmer, 511 U.S. at 834.

There is no evidence that Tucker was the likely target of an impending attack by Weaver. Appellees claim that Daniels was put on notice of a dispute between Tucker and Weaver because they approached him several hours before the killing and asked him the location of Earle, Arkansas. Appellees allege that it is possible the two men were having an argument about Earle's location, which should have put Daniels on alert that there was trouble between them. However, Daniels did not actually observe any disagreement between Weaver and Tucker. In fact, he said that the two men were laughing and acting "buddy-buddy"-like when they approached him.

-4-

Furthermore, Daniels observed the two inmates watching television together later in the evening. Appellees failed to present any evidence to suggest that Daniels had any actual knowledge that Weaver and Tucker were fighting, much less that he knew Weaver would attack Tucker in a few hours. Even if Daniels misinterpreted whether the two men were getting along, it may show that he is a bad judge of interpersonal relations, but it does not mean he violated Tucker's constitutional rights by being deliberately indifferent.

The district court also held that factual disputes remained because Daniels was prohibited from entering the barracks to assist Tucker due to an ADC policy requiring the officer in possession of the barracks keys to remain outside the barracks until assistance arrived. Presumably the district court thought this fact may have prevented Daniels from protecting Tucker. However, by the time Daniels knew something was wrong, the fight was already over. Therefore, even if there were no such policy regarding entering the barracks with keys, Daniels would not have been able to intervene in time to rescue Tucker.

The last two facts that the district court stated were in dispute were whether Daniels failed to properly inspect the barracks and whether he failed to properly supervise the barracks. However, viewed in the light most favorable to the appellees, these facts at best only demonstrate negligence. If Daniels had known that Weaver was a risk to Tucker and failed to supervise the barracks properly, appellee would have a stronger argument concerning Daniels' deliberate indifference. But here, Weaver's "decision to murder a fellow inmate came without warning," see Curry, 226 F.3d at 979, and Daniels is entitled to summary judgment on qualified immunity grounds.

We next turn to the claims against Warden Evans and Director Norris. The district court denied them qualified immunity as well, stating that there were disputed facts concerning whether they had prior notice of a pervasive risk of harm created by

under-staffing or of prior assaults in the barracks. In support of this order, the district court cited Smith v. Arkansas Department of Correction, 103 F.3d 637 (8th Cir. 1996), for the proposition that disputed facts regarding the policy and practices of staffing open barracks preclude entry of summary judgment on qualified immunity grounds. Reliance on the Smith case is misplaced. Smith held that summary judgment was inappropriate when there was a factual dispute concerning whether prison officials were in compliance with a court order detailing the minimum requirements necessary for proper supervision in a particular open barracks. Id. at 648. In Smith, the unit at issue was under a specific order outlining the minimum requirements necessary for proper supervision and staffing in its open barracks. See Finney v. Mabry, 546 F. Supp. 628 (E.D. Ark. 1982) (dismissing class action brought by inmates after finding that prison officials had sufficiently changed supervision procedures in the prison unit at issue to meet the requirements of the Constitution and a consent decree). Evans and Norris are not under a specific order regarding staffing and supervision requirements at the East Arkansas Regional Unit.

It appears the district court read Smith too broadly. Smith merely held that summary judgment was inappropriate where there were facts in dispute concerning whether the specific prison unit governed by the Finney order was following the requirements of that order. Here, on the other hand, there is no order governing the supervision policies of the unit and there is no evidence in the record that under-staffing at the East Arkansas Regional Unit has risen to the level of a constitutional violation. In sum, there is no evidence in the record demonstrating that Evans and Norris knew of and deliberately disregarded an excessive risk to inmate health or safety. Farmer, 511 U.S. at 834.

Finally, appellees claim that they are entitled to relief because Evans and Norris failed to properly train Daniels. However, several cases in this circuit have held that attendance at a training academy and on-the-job training is sufficient for proper training. See Andrews v. Fowler, 98 F.3d 1069, 1076-77 (8th Cir. 1996) (training

program consisting of attendance at a police academy and two weeks on-the-job training sufficient); <u>Williams-El v. Johnson</u>, 872 F.2d 224, 230 (8th Cir. 1989) (finding police academy and on-the-job training adequate for correctional officers with no prior experience). It is undisputed that Daniels completed a six-week training course at the Arkansas Department of Correction Training Academy as well as on-the-job training. There was no violation of clearly established law in the training of Daniels, and thus the claim is without merit.

## III.   CONCLUSION

We conclude that a reasonable official in Evans and Norris' position at the time the attack occurred would not have believed that his actions violated Tucker's clearly established constitutional rights. Evans, Norris and Daniels are therefore entitled to qualified immunity as a matter of law and the decision below is reversed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.